IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KATINA RIGGS-DEGRAFTENREED                        PLAINTIFF

v.                           No. 4:13-cv-669-DPM

WELLS FARGO HOME MORTGAGE, INC.; and
WELLS FARGO BANK, N.A.                            DEFENDANTS

## ORDER

**1.** After Katina Riggs-DeGraftenreed bought her first home, she experienced financial difficulties and had trouble staying current on her home loan. There were on-and-off bankruptcy proceedings. Along the way, Wells Fargo appeared in place of the original lender and mortgage holder. In March 2008, Wells Fargo wrote Riggs-DeGraftenreed, saying it would accelerate her note if she didn't get current by the end of April. № 67-6 at 23. She didn't. Wells Fargo hired Wilson & Associates, a law firm, at that point. Fast forward to the fall of 2009. Soon after her second bankruptcy ended, Riggs-DeGraftenreed made a contract to sell her house. She was communicating then with Wilson & Associates. There were telephone calls to, and letters from, the lawyers. The letters were a jumble of standardized correspondence: they gave different estimated payoff amounts; they listed different estimated fees and charges; one letter said Riggs-DeGraftenreed's note hadn't been

accelerated, and that she had thirty days to cure the default before acceleration; other letters said foreclosure was imminent, so she should get ready to move.

All this static occurred during the month or so before Riggs-DeGraftenreed sold her home. She told Wilson & Associates that her house was under contract, but the firm filed foreclosure proceedings anyway. The sale closed on schedule. Riggs-DeGraftenreed's note was paid in full. At the closing, she also paid a bunch of default-related and foreclosure-related attorney's fees and expenses. She now disputes fees and costs connected with the foreclosure. Her net proceeds were approximately $10,000. After she filed this case, Wilson & Associates sent Riggs-DeGraftenreed a check for $3,952.84. That tender was made about a year after the closing. The check, which was apparently never cashed, covered all the disputed attorney's fees and expenses charged at closing, except $135 for drive-by home inspections.

**2.** This case began in state court with hopes for a class action. Riggs-DeGraftenreed's complaint went through four versions. It was removed here. The parties disputed jurisdiction, but this Court held removal was proper. № 35. Riggs-DeGraftenreed sought to amend again and then remand.

The Court held, though, that the case needed clarity rather than more amendments, dismissed Riggs-DeGraftenreed's class allegations without prejudice at her request, and ruled on long-pending motions to dismiss. *№ 41.* Wilson & Associates was dismissed, as were Riggs-DeGraftenreed's claims for unjust enrichment, fraud, and accounting. Her claim for breach of the note and deed of trust was the only thing left. The Court retained jurisdiction over this Arkansas contract claim because the Court was deep in the case and another forum shift would've further delayed adjudication of the merits. *№ 41 at 2–3.*

Riggs-DeGraftenreed pleaded her contract claim with specificity. She said Wells Fargo misapplied her payments during her bankruptcies, resulting in greater indebtedness. She also alleged that Wells Fargo charged illegal and excessive fees—this is the closing-related point. Now, after discovery, Riggs-DeGraftenreed seeks partial summary judgment on Wells Fargo's liability for breach or a trial. The bank asks for judgment as a matter of law. The almost-cross-motions circumstance makes the intertwining record issues delicate; but the Court takes any genuinely disputed material facts in favor of

each non-moving party. *Anda v. Wickes Furniture Company, Inc.*, 517 F.3d 526, 531 (8th Cir. 2008).

**3.** Some general points need handling at the threshold. Riggs-DeGraftenreed says she's entitled to a judgment of breach because — among other things — Wells Fargo didn't own her note (and thus couldn't accelerate or charge any fees), and because Wells Fargo broke its promise (made by its agent, Wilson & Associates) not to accelerate or pursue foreclosure for thirty days. Riggs-DeGraftenreed argues these points on offense in her motion, and on defense against the bank's motion.

These are new breach allegations beyond the two pleaded with specificity in Riggs-DeGraftenreed's fourth amended complaint. *№ 16 at 8–9*. There's no general language indicating that the pleaded allegations were merely examples. The Court acknowledges that it strongly discouraged Riggs-DeGraftenreed's last attempt to amend, when she sought to drop class-related allegations. *№ 41 at 1–2*. So it's perhaps understandable why she didn't ask again, until her passing request in the dispositive motion briefing after Wells Fargo pushed back on the pleading point. *№ 73 at 1*. These new allegations were covered somewhat in Riggs-DeGraftenreed's deposition,

-4-

which was taken a few months before that briefing began. № 67-7. We're talking about variations on a theme of breach. The issue is close. But considering all the circumstances, and the procedural arc of this case in particular, the Court concludes that Wells Fargo is right: the two new allegations are a belated effort to avoid summary judgment, with insufficient roots in the pleadings, and the new allegations should therefore be disregarded. *Northern States Power Company v. Federal Transit Administration*, 358 F.3d 1050, 1056–57 (8th Cir. 2004). Because it's a close call, however, the Court will also address the new allegations on the merits.

First, ownership of the note. There's no genuine issue of material fact here. Riggs-DeGraftenreed said under oath in her bankruptcy papers that Wells Fargo was the lien holder. *№ 67-8 at 15*. Mortgage Electronic Registration Systems Inc. was merely a nominee on the deed of trust. *№ 60-2 at 1*. Riggs-DeGraftenreed points to a pre-foreclosure letter — one of the jumble from Wilson & Associates. It was addressed to "occupants" at the home's address. The letter said:

> Dear Mortgagor(s) and/or Occupant(s): The mortgage for the property in which you are living is about to be foreclosed (sometimes referred to as repossessed). We expect that ownership of the property will be transferred to Wells Fargo Bank N.A., who

is servicing the loan for the mortgagee, probably within the next
60 to 90 days. Shortly thereafter, it is probable that that ownership
will be transferred to the Secretary of Housing and Urban
Development (HUD).

№ 63-2 at 4. But, as the bank says, some servicers are owners too; and the

letter doesn't preclude this possibility. And the transfer mentioned is from

Riggs-DeGraftenreed. Wells Fargo's bankruptcy claim said the creditor was

"Wells Fargo Bank N. A. MERS AS NOMINEE." № 75-1 at 1. This statement

isn't inconsistent with the bank owning the note. Finally, the bank's corporate

representative testified that Wells Fargo was the investor on the note. № 67-6

at 53–54.* It's true, as Riggs-DeGraftenreed urges, no assignment from the

note's original holder to Wells Fargo has been produced. But the absence of

evidence is not always evidence of absence. And on this record as a whole, a

jury could come out only one way: Wells Fargo owned Riggs-DeGraftenreed's

note. The bank, therefore, could accelerate the debt.

Second, the broken promise about the thirty-day grace period before

any foreclosure. Here, too, Wells Fargo is entitled to judgment as a matter of

law. Riggs-DeGraftenreed's note was almost accelerated in April 2008—it's

_____

*All citations are to deposition pages.

undisputed that Wells Fargo gave notice that it would accelerate if Riggs-DeGraftenreed didn't get current by a date certain, and that she failed to do so. № 67-6 at 23–24 & 67-7 at 29–30. Instead, two days before the deadline, she filed bankruptcy again. That step prevented Wells Fargo from accelerating the note or pursuing foreclosure until the bankruptcy ended. 11 U.S.C. § 362(a). But when Riggs-DeGraftenreed's case was dismissed in October 2009, the law placed her in the same position as before she filed. *See*, *e.g.*, *In re Searcy*, 313 B.R. 439, 443 (Bankr. W.D. Ark. 2004). Acceleration occurred on 4 October 2009, two days after dismissal. At that point, the note entitled Wells Fargo to charge Riggs-DeGraftenreed for "costs and expenses including reasonable and customary attorneys' fees for enforcing this [n]ote to the extent not prohibited by applicable law." № 60-5 at 2. Riggs-DeGraftenreed's only counter here is that Wells Fargo couldn't accelerate then because it didn't own the note. But the undisputed facts establish that it could and did.

All this brings the case down to Wilson & Associates' November 4th grace-period letter. It's attached as an appendix. The sum of the letter was that Riggs-DeGraftenreed's note hadn't been accelerated; the total payoff was then

$60,471.38, though no payoff was required; to bring her loan current as of that day, she owed $6,599.56; and she could avoid acceleration and foreclosure by bringing the loan current within thirty days. № 63-2 at 12–13.

When she got this letter, Riggs-DeGraftenreed called Wilson & Associates. She asked for payoff information. № 68-3 at 22. She explained that she'd signed a contract to sell her home. № 67-7 at 52–53, 63–64. Someone at the law firm told her everything would be fine. № 67-7 at 41–42, 64. About two weeks later, Wilson & Associates nonetheless filed a foreclosure action for Wells Fargo. № 73-2. Riggs-DeGraftenreed closed with her buyer on November 23rd, as planned. By that date, however, the Wells Fargo payoff had gone up approximately $1,200 from the November 4th number. The new total included foreclosure-related attorney's fees, and various foreclosure-related costs, some of which were never incurred. № 63-2 at 9–10.

Riggs-DeGraftenreed is partly right: the law firm was indisputably Wells Fargo's agent. Wilson & Associates was acting within the scope of its authority, apparent if not actual, and the lawyers' words were the bank's words. *Foundation Telecommunications, Inc., v. Moe Studio, Inc.*, 341 Ark. 231,

239, 16 S.W.3d 531, 536–37 (2000); RESTATEMENT (THIRD) OF AGENCY § 2.03 (2006). Was the evaporating grace period a breach of contract?

No, for three reasons. First, Riggs-DeGraftenreed didn't accept the November 4th offer to bring her loan current by paying approximately $6,600. She was already on another road. A few days before Wilson & Associates sent this letter, Riggs-DeGraftenreed had contracted to sell her house to a Ms. Cash. № 63-2 *at 1 & 67-7 at 37*. Riggs-DeGraftenreed's hedge — she might not have sold if she'd known the foreclosure action was going to be filed — can't create a genuine issue of material fact as against the calendar. *№ 67-7 at 61 & 68-1*.

Second, Riggs-DeGraftenreed has not argued, much less offered evidence, that she could have accepted the November 4th offer and paid up her note by early December without a sale. Assuming the letter was a contract, it was unilateral. *Aon Risk Services, Inc. v. Meadors*, 100 Ark. App. 272, 280–81, 267 S.W.3d 603, 609 (2007). Riggs-DeGraftenreed gave no consideration for this one-way promise; and the law requires that she perform before claiming breach. *Ibid*. She didn't — because of her imminent closing with Cash. Riggs-DeGraftenreed hasn't offered any evidence that she

was ready, willing, and able to perform, so she didn't sustain recoverable damages on this new theory. RESTATEMENT (SECOND) OF CONTRACTS § 254(1) cmt. a.

Third, Riggs-Degraftenreed's lost-opportunity-to-close-sooner argument doesn't hold up either. She's offered no evidence that her buyer, Ms. Cash, could have closed sooner. Riggs-Degraftenreed has offered no evidence that others involved in the closing — for example, the title insurance company, the closing agent, and any lender behind Ms. Cash — were ready to go sooner. Because a real estate closing involves many pieces and many people, Riggs-DeGraftenreed's solo opinion that she would have closed sooner to avoid any foreclosure is simply insufficient to get to the jury on this issue. *Thorn v. International Business Machines, Inc.*, 101 F.3d 70, 74–75 (8th Cir. 1996).

The Court disagrees with Wells Fargo's argument that the November 4th letter was too indefinite to be a contract. But Riggs-DeGraftenreed's letter-based arguments about the evaporating grace period fail on the undisputed material facts and the governing law. Wells Fargo prevails on these arguments.

-10-

**4.** Riggs-DeGraftenreed's misamortization claim also fails as a matter of law on the record presented. She argues that Wells Fargo misamortized her loan by not applying her payments according to the deed of trust. № 16 at 2–3. She's abandoned her argument that her payments were mishandled during the bankruptcies. She says, instead, that the face of the loan summaries shows that Wells Fargo applied her final payment first to fees and costs, and then to principal. № 75 at 4–5. The deed of trust required the reverse. № 60-2 at ¶ 3. Without any explanation of how to interpret the summaries, though, this evidence is merely colorable. *Gregory v. City of Rogers, Arkansas*, 974 F.2d 1006, 1010 (8th Cir. 1992). All they show is that the bank paid  multiple things—fees, costs, and principal—on the same day from the final payment. *№ 75-4 at 11 & 75-6 at 18–19.* A jury would have to speculate to find  a breach based only on these summaries. *Gregory*, 974 F.2d at 1010. And even if the jury returned that speculative verdict, Riggs-DeGraftenreed would, at most, be entitled to nominal damages of $1 — she hasn't shown actual damages. There's no evidence, for example, that she paid more because of this alleged sequencing problem. *Welsco, Inc. v. Brace*, 2014 WL 4929453, at *23 (E.D. Ark.

30 September 2014); HOWARD W. BRILL & CHRISTIAN H. BRILL, ARKANSAS LAW OF DAMAGES 47–49 (6th ed. 2014).

**5.** Wells Fargo is entitled to summary judgment on most, but not all, of Riggs-DeGraftenreed's claim about illegal and excessive fees charged at the closing. Riggs-DeGraftenreed prevails — as a matter of law — on two issues.

First, those home inspection fees. Wells Fargo could recover them only if attempts to contact Riggs-DeGraftenreed by telephone failed. 24 C.F.R. § 203.377. But Riggs-DeGraftenreed testified that she communicated with Wells Fargo many times. № 81-1. She spoke with the bank by telephone before and after she sold her home. № 67-7 at 35–37. Wells Fargo hasn't met proof with proof: there's no evidence that Riggs-DeGraftenreed didn't answer the bank's telephone calls. On these undisputed facts, Riggs-DeGraftenreed is entitled to judgment on the inspection fees — $135.

Second, the post-November 4th attorney's fees, and supposed expenses, related to foreclosure. After a default, the note entitled Wells Fargo to "require [Riggs-DeGraftenreed] to pay costs and expenses *including reasonable and customary attorneys' fees*[.]" № 60-5 at 2 (emphasis added). She was in default in late October. In early November, though, Riggs-DeGraftenreed told Wells

-12-

Fargo (through Wilson & Associates) that she was under contract to sell her home. № 67-7 at 52–53. She requested payoff information, and someone in the law firm's loss mitigation department told her everything would be fine. № 67-7 at 41–42, 52–53, 64 & 68-3 at 22–23. But, two weeks later, Wells Fargo started the foreclosure process anyway. № 73-2 at 1. The same lawyer who sent Riggs-DeGraftenreed the November 4th letter with the payoff "for informational purposes," № 63-2 at 12–13, also signed the foreclosure complaint. № 73-2 at 9. That letter, it's undisputed, prompted Riggs-DeGraftenreed's call to the law firm, her request for payoff particulars for the coming closing, and the assurance from someone working for Wilson & Associates that everything would be fine.

On this record, it was unreasonable as a matter of law for Wells Fargo to incur or charge foreclosure-related fees and expenses knowing Riggs-DeGraftenreed was on the brink of selling her home. As she would later put it, she "was trying to take care of the situation." № 67-7 at 61. Reasonableness is usually a fact question. *Edgin v. Central United Life Insurance Company*, 2013 Ark. App. 233 at 4–5, 2013 WL 145687, at *2. But not always, and not here: No reasonable juror could conclude, in the face of this imminent

-13-

sale, that foreclosure-related attorney's fees and expenses were reasonable. Wells Fargo has offered no evidence that the early November call didn't happen. Instead, the Wilson & Associates Rule 30(b)(6) witness confirmed that Riggs-DeGraftenreed called seeking payoff information. № 68-3 *at 22*. She wanted that information "verbally"; and the law firm provided it in that form a few days after her call. *Ibid*. Wells Fargo has offered no evidence that the "everything will be fine" assurance was not given. Instead, the law firm's records are silent on this score. № 68-3 *at 23*. Wells Fargo has offered no proof that the closing was wobbly or that there was any uncertainty about this sale. Wells Fargo's interest was protected by the recorded deed of trust and note. Riggs-DeGraftenreed couldn't close without making the bank whole.

Attorney's fees incurred in following up on the sale would have been reasonable: asking for a copy of the contract, getting the closing date, and monitoring the closing documents. If there was uncertainty about the planned sale to Cash — if it looked like a sham, if it was months away, if it was a short sale, or if the closing had tanked — pursuing foreclosure and incurring related costs might well have been reasonable. It would be for a jury to decide. But saying everything would be fine, responding to Riggs-DeGraftenreed's

-14-

request for detailed payoff information, filing a foreclosure complaint a week before the planned closing, and then requiring payment of foreclosure-related items as the price of closing — this combination makes the foreclosure-related fees and expenses unreasonable as a matter of law. Taking the evidence in the light most favorable to Wells Fargo, and giving the bank the benefit of all reasonable inferences, the record establishes Wells Fargo's breach of the note through its lawyers' actions.

What are Riggs-DeGraftenreed's damages from Wells Fargo's breach? Arkansas law entitles her to be made whole, to be put in the position she would have been in had there been no breach. *QHG of Springdale, Inc. v. Archer*, 2009 Ark. App. 692, at 6–7, 373 S.W.3d 318, 323. There's no need for a trial on this issue either. Riggs-DeGraftenreed is entitled to a refund of the foreclosure-related expenses and attorney's fees charged at the closing and paid to Wilson & Associates for Wells Fargo. *№ 67-7 at 27–28* (exhibit pagination). It's undisputed that those expenses and fees totaled $3,952.84. But it's also undisputed that, one year after the closing, she got her refund. Wilson & Associates unconditionally paid that amount in full to Riggs Degraftenreed's lawyer. *№ 1 at 90*. Wells Fargo says Riggs-DeGraftenreed's

-15-

failure to cash this check torpedoes her claim to any foreclosure-related costs and attorney's fees. № 61 at 7 n.2. Not so. While Riggs-DeGraftenreed can't recover for additional damages suffered as a consequence of not cashing the check—such as interest after the refund date—she's entitled to be made whole for Wells Fargo's breach. *Archer*, 2009 Ark. App. 692, at 6–7, 373 S.W.3d at 323; *Taylor v. George*, 92 Ark. App. 264, 273, 212 S.W.3d 17, 24 (2005). And being made whole includes being compensated for the year-long delay in getting paid back. *Reynolds Health Care Services, Inc. v. HMNH, Inc.*, 364 Ark. 168, 180, 217 S.W.3d 797, 807 (2005).

Riggs-DeGraftenreed is therefore entitled to $3,952.84 in foreclosure-related costs and attorney's fees, and prejudgment interest for the lost use of that money at 6% from 23 November 2009 (the closing date) until 29 November 2010 (the refund date). ARK. CONST. art. 19 §§ 13 & 14 (repealed 2011). That amount is $241.07. Riggs-DeGraftenreed didn't accept Wilson & Associates check because she was then seeking to represent a proposed class. № 67-7 at 64. That circumstance no longer exists. If Riggs-Degraftenreed can't negotiate the Wilson & Associates check now, then Wells Fargo must fill the hole.

-16-

\*   \*   \*

Cross motions for summary judgment, № *60 & 63*, granted in part and denied in part. Riggs-DeGraftenreed's lack-of-ownership claim, misamortization claim, and evaporating-grace-period claim fail as a matter of law. Wells Fargo's motion is granted on these issues. Riggs-DeGraftenreed is entitled to summary judgment on her excessive-fees claim. She's entitled to recover $135 in inspection fees, $3,952.84 in foreclosure-related costs and attorney's fees, and $241.07 in interest on the post-November 4th costs/attorney's fees from the closing date to the refund date. The damages total is $4,328.91. Riggs-DeGraftenreed may also be entitled to a reasonable attorney's fee for prevailing in this case, ARK. CODE ANN. § 16-22-308, as may later be awarded on timely motion, considering all the circumstances, and Rule 54(b) costs.

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

29 January 2016



WILSON & ASSOCIATES, P.L.L.C.

Attorneys at Law – Arkansas and Tennessee
1521 Merrill Drive, Suite D-220
Little Rock AR 72211
501-219-9388
Fax: 501-219-9458
Internet: www.wilson-assoc.com

THIS LAW FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED CAN BE USED FOR THE PURPOSE OF COLLECTING THE DEBT.

November 4, 2009

**VIA CERTIFIED MAIL AND REGULAR MAIL**

Ms. Katina R. DeGraftenreed
518 East 21st Street
Little Rock, AR  72206

RE:   Katina R. DeGraftenreed a/k/a Katina R. Riggs
      518 East 21st Street
      Little Rock, Arkansas 72206
      Loan No. 0644769754 / W&A No. 72-132397
      FHA No. 031-3231163

Dear Ms. DeGraftenreed:

**THIS IS AN ATTEMPT TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.   HOWEVER, IF YOU HAVE PREVIOUSLY BEEN DISCHARGED FROM A CHAPTER 7 OR 13 BANKRUPTCY, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT FROM YOU PERSONALLY.   IF YOU HAVE RECEIVED SUCH A DISCHARGE, THIS LETTER ONLY SERVES AS NOTICE OF THE POTENTIAL FORECLOSURE AS REQUIRED BY EITHER YOUR SECURITY INSTRUMENT, STATE LAW, AND/OR THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT.**

Wilson & Associates, P.L.L.C. has been retained by Wells Fargo Bank N.A. to notify you that you are currently in default under the terms of your note and mortgage or deed of trust in that you have failed to make the monthly payments due through the date of this letter. Failure to cure this breach on or before thirty (30) days from the date of this letter may result in acceleration of your debt, and foreclosure and sale of the property by judicial or nonjudicial proceedings without further demand or notice. The amount of the debt that we are attempting to collect and the sum necessary to bring your loan current as of the date of this letter is $6,599.56. Because of interest, late charges, and other charges that may vary from day to day, the exact amount due on the day that you pay may be greater. If you make a payment that will be received after the date of this letter, you should contact our Loss Mitigation Department at 501-224-5239 to confirm what additional amounts have become due. Although the debt has not been accelerated and we are not demanding that you pay off the entire loan at this time, for informational purposes only, the total payoff through the date of this letter is $60,471.38.

Ms. Katina R. DeGraftenreed
November 4, 2009
Page 2

We are required by your security instrument to advise you that you have a right to
reinstate the loan after acceleration and a right to assert in any foreclosure proceeding that no
default exists, or any other defense you may have to acceleration and foreclosure. The lender is
entitled to collect all expenses of foreclosure including, but not limited to, reasonable attorney
fees, costs of documentary evidence, abstracts, appraisals, and title reports.

UNLESS, WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS NOTICE,
YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, WE
WILL ASSUME THE DEBT TO BE VALID. IF, WITHIN THIRTY (30) DAYS OF
YOUR RECEIPT OF THIS NOTICE, YOU NOTIFY US IN WRITING THAT THE
DEBT, OR ANY PORTION THEREOF, IS DISPUTED, WE WILL OBTAIN A
VERIFICATION OF THE DEBT OR, IF THE DEBT IS FOUNDED UPON A
JUDGMENT, A COPY OF THE JUDGMENT, AND WE WILL MAIL YOU A COPY OF
SUCH VERIFICATION OR JUDGMENT.

IF THE ORIGINAL CREDITOR IS DIFFERENT FROM THE CREDITOR
NAMED ABOVE, THEN UPON YOUR WRITTEN REQUEST WITHIN THIRTY (30)
DAYS OF THE RECEIPT OF THIS NOTICE, WE WILL PROVIDE YOU WITH THE
NAME AND ADDRESS OF THE ORIGINAL CREDITOR.

THIS IS AN ATTEMPT TO COLLECT A DEBT.   ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU HAVE
PREVIOUSLY BEEN DISCHARGED FROM A CHAPTER 7 OR 13 BANKRUPTCY,
THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT FROM YOU
PERSONALLY. IF YOU HAVE RECEIVED SUCH A DISCHARGE, THIS LETTER
ONLY SERVES AS NOTICE OF THE POTENTIAL FORECLOSURE AS REQUIRED
BY EITHER YOUR SECURITY INSTRUMENT, STATE LAW, AND/OR THE
FEDERAL FAIR DEBT COLLECTION PRACTICES ACT.

If you have any questions regarding the contents of this letter, please feel free to contact
our Loss Mitigation Department at 501-734-2100.

Sincerely,

WILSON & ASSOCIATES, P.L.L.C.

Matthew Smith

cc:   Ms. Paula Jamison

CDEMANDtoPrimaryDebtor_2_msaling_091104_957